**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-3478-WJM-STV

ANDERSON STRAKER,

    Plaintiff,

v.

STANCIL, Warden,
ROOT, Captain,
MOORE, Lieutenant,
ANTHONY, SIS Lieutenant,
TORRES, Correctional Officer, SHU Staff,
STRATTEN,[1] Correctional Officer, SHU Staff,
GALBAN,[2] Correctional Officer, SHU Staff,
LIGRIN,[3] Medical Supervisor,
AVALOS, Unit Manager, and,
TWO UNKNOWN INDIVIDUALS,
    Defendants.

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff Anderson Straker sues numerous USP Florence correctional officers and prison staff ("Defendants") in their personal capacities in connection with an assault he suffered at the hands of a fellow inmate during his former incarceration. (ECF No. 109.) Plaintiff sues for violations of his First Amendment and Eighth Amendment rights. (*See generally id.*)

---

[1] The correct spelling of Defendant Stratten's name is apparently "Stratton." (*E.g.*, ECF No. 113 at 10.)

[2] The correct spelling of Defendant Galban's name is apparently "Galvan." (*E.g.*, ECF No. 113 at 10.)

[3] The correct spelling of Defendant Ligrin's name is apparently "Lindgren." (*E.g.*, ECF No. 113 at 13.)

Currently before the Court is Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 113) ("Motion"), which is ripe for disposition (*see* ECF Nos. 120, 121). For the reasons stated below, the Motion is granted.

## I. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Iqbal*, 556 U.S. at 678.

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## II. BACKGROUND[4]

Plaintiff is a former inmate of USP Florence, a Bureau of Prisons ("BOP") maximum-security facility located in Florence, Colorado. (¶ 1.) Prior to USP Florence, he was incarcerated at USP Allenwood, a BOP maximum-security facility located in Allenwood, Pennsylvania. (*Id.*) While at USP Allenwood, Plaintiff was assaulted over the course of four days by another inmate, who accused him of being a "snitch." (¶¶ 1–2.) He alleges that following this attack, he was prevented from filing an administrative grievance by an unnamed corrections officer working at USP Allenwood. (¶ 3.) After being transferred to USP Florence, Plaintiff was able to file a grievance relating to the USP Allenwood incident. (¶ 4.)

Plaintiff also informed unnamed corrections officers at USP Florence that he had been previously assaulted by an inmate from the District of Columbia ("D.C.") while at USP Allenwood and that he had filed a lawsuit against corrections officers who had

---

[4] The following factual summary is drawn from the Second Amended Complaint (ECF No. 109), except where otherwise stated. The Court assumes the allegations in the Second Amended Complaint are true for the purposes of deciding the Motion to Dismiss. *See Ridge at Red Hawk*, 493 F.3d at 1177.

All citations to docketed materials—other than to the Second Amended Complaint—are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Citations to (¶ __), without more, are references to the Second Amended Complaint.

3

failed to protect him.  (¶¶ 4, 29.)  Corrections officers Moore, Torres, Stratton, and Galvan "ordered and oversaw the transfer of [Plaintiff] to a cell with a violent inmate" from D.C.  (¶ 5.)  This was despite Plaintiff "constantly" seeking their assistance in preventing another assault by an inmate from D.C.  (¶ 30.)  After filing his lawsuit, Plaintiff was regarded as a "snitch" by the correctional officers of USP Allenwood and later by his fellow inmates at USP Florence.  (¶ 5.)  Plaintiff pleaded with Warden Stancil and Unit Manager Avalos to be removed from his cell, but they refused.  (*Id.*)

In fact, Plaintiff's cell assignment had been changed in retaliation for his lawsuit against USP Allenwood corrections officers and initiated with the intent that he would be assaulted by his new cellmate.  (¶¶ 34–35.)  Defendants went so far as to approach Plaintiff's new cellmate to tell him that Plaintiff had "killed a U.S. citizen" and was a "snitch," and several unnamed guards offered a reward in exchange for assaulting Plaintiff.  (¶¶ 39, 41–42.)  When Plaintiff was in fact assaulted by his new cellmate, he "was severely beaten, knocked unconscious, and suffered a concussion."  (¶ 6.)  Immediately after the assault, Plaintiff's cellmate was "removed from the cell and received head nods and thumbs up from the guards . . . to indicate their satisfaction and pleasure" with the assault.  (¶ 44.)

Following this second assault, Moore refused to investigate the incident for four days and left Plaintiff in his cell with his assailant,[5] risking further injury to Plaintiff.  (¶ 6.)  Unit Manager Avalos "expressly denied Plaintiff medical care" over those four days, and Medical Supervisor Lindgren "refused to provide any medical treatment to Plaintiff."  (¶¶ 6, 46–47.)

---

[5] It is unclear from the Second Amended Complaint when Plaintiff's cellmate was returned to the cell after being congratulated by the unnamed guards as described above.

Plaintiff then filed this suit alleging violations of his First and Eighth Amendment rights.

### III. ANALYSIS

**A.    *Bivens* Does Not Provide a Remedy for Most of Plaintiff's Asserted Claims[6]**

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "created a claim for damages that allowed the plaintiff to seek recovery from federal agents who had allegedly violated his Fourth Amendment rights by entering his home, placing him in manacles, and threatening his family." *Silva v. United States*, 45 F.4th 1134, 1138 (10th Cir. 2022). As the Tenth Circuit colorfully put in a recent case:

> The story of *Bivens* is a saga played out in three acts: creation, expansion, and restriction. . . .  [And] [i]n the years since it first expressed caution at the prospect of [further] expanding *Bivens*, the Court has performed its own version of Bonaparte's retreat from Moscow and progressively chipped away at the decision—to the point that very little of its original force remains.

*Id.* at 1138–89. So complete has the Supreme Court's retreat been that in *Egbert v. Boule*, 142 S. Ct. 1793 (2022)—a case in which four justices recognized the facts were "substantially identical to those in *Bivens* itself"—the Court declined even a meager "extension" of *Bivens*. *Id.* at 1819 (Sotomayor, J., concurring in the judgment in part and dissenting in part); *id.* at 1810 (Gorsuch, J., concurring in the judgment). *Egbert* left

---

[6] To the Court's considerable dismay, it notes a substantial portion of Plaintiff's brief, though copied nearly verbatim from an article in *Prison Legal News*, is unattributed. (ECF No. 120 at 16–17.) Plaintiff's brief cites the article in sporadic footnotes, but never indicates Part VII.B. is practically a wholesale reproduction of an article written by Bob Williams in April 2003, with some sections bolded by counsel. (*Id.*)

5

the Tenth Circuit panel in *Silva* "in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances."  *Silva*, 45 F.4th at 1140 (quoting *Egbert*, 142 S. Ct. at 1803) (internal citation omitted).

The Tenth Circuit has emphasized that the key takeaway from *Egbert* is that courts may dispose of actions seeking to extend *Bivens* for "two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs."  *Silva*, 45 F.4th at 1141 (quoting *Egbert*, 142 S. Ct. at 1804) (emphasis and alteration in *Silva*).

### 1. First Amendment Retaliation

The Supreme Court has explicitly held "there is no *Bivens* action for First Amendment retaliation."  *Egbert*, 142 S. Ct. at 1807.  Therefore, with respect to Plaintiff's First Amendment retaliation claim, the Motion is granted.

### 2. Eighth Amendment Claims

Plaintiff asserts four theories under which his Eighth Amendment rights have been violated: (1) failure to prevent the assault by his cellmate; (2) actively directing the assault by his cellmate; (3) delaying the investigation of the assault by his cellmate; and (4) deliberate indifference to his serious medical needs.  (*See* ECF No. 109 ¶¶ 27–56.)

The fourth of these theories stands apart, having been explicitly recognized as a viable *Bivens* action in *Carlson v. Green*, 446 U.S. 14 (1980).  *Egbert*, 142 S. Ct. at 1802 (describing *Carlson* as fashioning a cause of action under the Constitution "for a federal prisoner's inadequate-care claim under the Eighth Amendment").  The others would require extension of *Bivens* beyond the three contexts in which the Supreme

Court has recognized an implied cause of action under the Constitution. It is not enough that these theories are each brought under the same constitutional provision as the action recognized in *Carlson*. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *see Silva*, 45 F.4th at 1141–42 ("The distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to medical needs claim—which the Supreme Court recognized as a valid *Bivens* action in *Carlson*—is sufficient to conclude that Plaintiff's claim would require an expansion of *Bivens* to move forward even though it originates under the Eighth Amendment.").

Like the plaintiff in *Silva*, Plaintiff was a federal inmate both when he filed this action and at the time of the alleged constitutional violations underlying this action. (*See* ECF No. 1; *Silva*, 45 F.4th at 1136.) As such, "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's [other] *Bivens* claim[s]." *Silva*, 45 F.4th at 1141. Therefore, with respect to Plaintiff's failure-to-protect, directing-the-assault, and delay-of-investigation theories, the Motion is granted.

The Court must pause here and reflect on the fact that Plaintiff's allegations discussed above portray a truly reprehensible and malicious course of conduct on the part of Defendants. Had the alleged events in this case occurred in state correctional facilities, Plaintiff would have very strong claims under Section 1983 for significant monetary damages and injunctive relief. The slow and steady evisceration of *Bivens* by the Supreme Court over the years, coupled with the persistent failure on the part of

7

Congress to provide federal prisoners like Mr. Straker with a statutory remedy to address intentional official misconduct as alleged herein, has created a fundamentally unjust legal state of affairs. Congress must act promptly to rectify this gaping void in the remedies available to federal prisoners subjected to unconscionable misconduct on the part of federal corrections officers.

**B.     Plaintiff Has Not Stated a Plausible Deliberate Indifference to Medical Need Claim**

One of Plaintiff's Eighth Amendment theories, however, asserts a claim for which the Supreme Court has recognized the availability of a *Bivens* action. *See Carlson*, 446 U.S. at 17–18. With respect to this claim, Defendants assert they are entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once the qualified immunity defense is raised, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the

8

plaintiff maintains." *Id.* (internal quotation marks omitted).  Nonetheless, the clearly established prong

> involves more than a scavenger hunt for prior cases with precisely the same facts.  The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.  The Supreme Court has cautioned [lower] courts not to define clearly established law at a high level of generality, but to focus on whether the violative nature of particular conduct is clearly established.

*Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citations omitted).

Defendants argue the factual allegations in the Second Amended Complaint relating to inadequate medical care concern only Lindgren and Avalos.  (*See* ECF No. 113 at 12.)  Further, they argue those allegations are insufficient to plead a constitutional violation, and therefore Lindgren and Avalos are entitled to qualified immunity.  (*Id.* at 12–13; ECF No. 121 at 9–10.)  Specifically, Defendants assert the only allegation regarding Lindgren is that she "refused to provide any medical treatment to the Plaintiff" despite his "numerous serious injuries and countless requests for assistance."  (ECF No. 113 at 13; ¶ 46.)  And with respect to Avalos, Defendants assert the only allegation related to this claim is that she "refused to assist . . . Plaintiff in any way [*sic*]" and would "ignore" his "requests for medical attention and would not allow him access to any administrative remedy."  (ECF No. 113 at 13; ¶ 47.)  The Court notes the Second Amended Complaint contains additional allegations related to Avalos, which relate to Plaintiff's other Eighth Amendment theories.  (*E.g.*, ¶¶ 5–6, 51–52.)

Plaintiff argues that "[e]ach of these allegations, precisely made towar[d] the specific Defendants, indicated knowledge the Defendants had or should have

9

reasonably had." (ECF No. 120 at 7.) In support, Plaintiff discusses *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017), a case the Supreme Court found presented a new *Bivens* context. (ECF No. 120 at 7–8.) This suggests he fails to appreciate that Defendants concede his inadequate-care claim is available under *Bivens*. (ECF No. 113 at 3 n.2 ("Defendants do not, at this juncture, assert [*Bivens* is unavailable] with respect to Plaintiff's Eighth Amendment deliberate indifference to medical needs claim.").)

Contrary to Plaintiff's brief argument, the Court finds the Second Amended Complaint's sparse allegations fail to show a constitutional violation. The Second Amended Complaint contains facts plausibly alleging a "sufficiently serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). Plaintiff alleges that he was "severely beaten, knocked unconscious, and suffered a concussion as a result" of the assault by his cellmate. (¶ 6.) This allegation satisfies the objective component of Plaintiff's claim. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

However, the Second Amended Complaint contains no specific allegations regarding what Lindgren and Avalos knew about his medical condition or the risks to his health. (*See* ¶¶ 46–47.) While Plaintiff argues that requiring more than the barebones allegations contained in the Second Amended Complaint imposes an "extraordinarily high standard" unsupported by authority, this is not so. (ECF No. 120 at 7.) To plausibly plead his claim, he must allege facts that Lindgren and Avalos "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." *Farmer v. Brennan*, 511 U.S.

10

825, 837 (1994). "This subjective standard lies 'somewhere between the poles of negligence at the one end and purpose . . . at the other.'" *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (Gorsuch, J.) (quoting *Farmer*, 511 U.S. at 836). "The Supreme Court has analogized it to criminal recklessness," and "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The barely two sentences of facts alleged in the Second Amended Complaint that Lindgren and Avalos refused to provide or ignored his requests for medical treatment, even considered in the light most favorable to him, are insufficient to "nudge[] [his] clai[m] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, the Court finds he has failed to "plea[d] facts showing . . . that [Lindgren or Avalos] violated [his] . . . constitutional right." *al-Kidd*, 563 U.S. at 735. Because this alone is enough to find Lindgren and Avalos are entitled to qualified immunity, the Court goes no further. *Pearson*, 555 U.S. at 236.

With respect to Plaintiff's Eighth Amendment inadequate-care claim, the Motion is granted.

C.   **Dismissal with Prejudice**

Because Plaintiff has already made three unsuccessful attempts to plead plausible claims (two with the assistance of counsel), the Court concludes further amendment would be futile. Therefore, the Court dismisses the Second Amended Complaint with prejudice. *See Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 113) is GRANTED;

2. The Second Amended Complaint (ECF No. 109) is DISMISSED WITH PREJUDICE;

3. The Clerk shall enter judgment in favor of Defendants and against Plaintiff and terminate this action; and

4. The parties shall bear their own fees and costs.

Dated this 3rd day of August, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge